UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JON R. TOMASIK,

        Petitioner,

v.                                        Case No:  5:13-cv-438-Oc-10PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and ATTORNEY GENERAL, STATE OF
FLORIDA,

        Respondents.
_____/

## OPINION AND ORDER

This matter comes before the Court upon an amended petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jon R. Tomasik ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 19, filed September 3, 2014).   Petitioner attacks the convictions entered against him by the Fifth Judicial Circuit Court in Citrus County, Florida on two counts of attempted first degree murder with a firearm, one count of burglary while armed, and one count of kidnaping while armed. *Id.*  Respondents filed a response to the amended petition (Doc. 20).  Petitioner filed a reply (Doc. 22), and the case is now ripe for review.

Petitioner raises two claims in his amended petition. The first claim contains four separate sub-claims of ineffective assistance of trial counsel ("Counsel").   To avoid confusion, each sub-claim will be labeled and addressed separately.  The claims in the petition are: (1) Counsel was ineffective for coercing Petitioner to plead guilty (Claim One); (2) Counsel was ineffective for failing to ensure that the trial court understood that his gunshot victim was male (Claim Two); (3) Counsel was ineffective for failing to inform

Petitioner he could proceed to trial if he did not wish to plead guilty (Claim Three); (4) Counsel failed to inform Petitioner of viable defenses to his charges (Claim Four); and (5) Petitioner's plea was involuntary because he was unaware of viable defenses to the charges against him (Claim Five) (Doc. 19 at 2-3).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be denied.  Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.    Background and Procedural History[1]

On March 7, 1997, the State of Florida charged Petitioner by amended information with two counts of attempted first degree murder with a firearm, in violation of Florida Statute §§ 782.04(1), 777.04(1) and 775.087 (counts one and two); burglary of a dwelling while armed, in violation of Florida Statute §§ 810.02(1) and (2)(b) (count three), and kidnaping while armed, in violation of Florida Statute §§ 787.01(1) and 775.087(1) (count four) (Ex. A at 18).

On August 26, 1997, Petitioner signed a written plea agreement in which the state agreed to recommend a fifteen year prison sentence and fifteen years of probation in exchange for a guilty plea (Ex. A at 29).  The plea was not accepted by the trial court, and on December 5, 1997, Petitioner signed an amended written plea agreement in which he

---

[1] Unless indicated otherwise, references or citations to exhibits or appendices are to those filed by Respondents on November 4, 2014 (Doc. 21).  Citations to the transcript of Petitioner's plea colloquy, located at pages 80-93 of Exhibit A, will be cited as (Plea at __).

agreed to plead guilty to each count of the amended information in exchange for a sentence of twenty-one years in prison followed by ten years of probation (Ex. A at 23-29).   The trial court conducted a plea hearing on December 8, 1997 (Ex. A at 80-93, "Plea").   The court found that Petitioner understood the proceedings and was competent to proceed. *Id.* at 90.   He was adjudicated guilty and sentenced to twenty-one years in prison on counts one, two, and four and to ten years in prison on count three.   Each sentence was to be served concurrently and followed by ten years of probation. *Id.* at 42-49.   After several motions to correct his sentence, Petitioner was resentenced on December 15, 2010 to twenty-one years in prison on all four counts, concurrent, with ten years' probation consecutive on counts one through three, and nine years' probation on count four concurrent with the other probationary terms (Ex. C at 72-82).

On March 13, 1998, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") which he voluntarily dismissed on May 5, 1998 (Ex. A at 94-99; 64-71).   On May 17, 1999, Petitioner filed a second Rule 3.850 motion (Ex. B at 76-93).   The state court did not rule on this motion for more than thirteen years.   On November 4, 2013, the post-conviction court denied the motion on the grounds that the "claims from the 1999 Motion for Post-conviction Relief are conclusively refuted by the record[.]" (Ex. B at 5-21).   Florida's Fifth District Court of Appeal affirmed without a written opinion (Ex. G at 2); *Tomasik v. State*, 145 So. 3d 864 (Fla. 5th DCA 2014) (per curiam).

Petitioner filed his amended habeas petition in this Court on September 3, 2014 (Doc. 19).

## II.   Governing Legal Principles

### A.   Standard of Review

Pursuant to 28 U.S.C. §§ 2254(d)(1) and (2), federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).  Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

## B. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's

conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In the context of a guilty plea, the first prong of *Strickland* requires that a petitioner show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). The second prong requires that the petitioner show a reasonable probability that, but for counsel's errors, he would have entered a different plea. *Id.*

### III.  <u>Analysis</u>

### A.  **Claim One**

Petitioner asserts that Counsel was ineffective because he "secured" Petitioner's plea bargain "through repeated warnings that the trial judge wanted to give him a life sentence." (Doc. 19 at 2).  Petitioner raised this claim in his second Rule 3.850 motion where he argued that he accepted the state's first offer of fifteen years in prison because Counsel "calls the defendant several times pressuring the defendant to make a plea

agreement with the threat that the court was just waiting for him to go to trial so he could give him a life sentence." (Ex. A at 118).[2] Petitioner now claims that Counsel failed to explain "the limits on the sentencing judge's discretion," and had he done so, he would not have accepted the State's second plea offer (Doc. 19 at 2). The post-conviction court rejected this claim as conclusively refuted by the record, and Florida's Fifth District Court of Appeal affirmed without a written opinion (Ex. B at 5-20; Ex. G). The record supports the state courts' rejection of Claim One.

Three months prior to Petitioner's plea colloquy, the trial court held a status conference at which Counsel asked to "put something on the record" (Ex. A at 110). Counsel then queried Petitioner about his willingness to accept a plea.

> Q: Mr. Thomasik [sic], you're aware under the current system of guidelines that I'm aware of, and there's different ways of figuring it, but under the current ones that I'm aware of, that the maximum of the guidelines, if you're convicted on all of them, will be 26 years.
>
> A. Right.
>
> Q. Okay. And have I advised you that if you go to trial, and you're convicted as charged, and if the court finds a reason to depart under the guidelines, you could do up to life; is that right?
>
> A. That's right.
>
> Q. Okay. That having been said, have I talked to you fully about this case?
>
> A. Yes, you have.
>
> Q. Have I answered every question you've asked me?
>
> A. Yes, you have.

---

[2] The trial court refused to accept the fifteen-year plea agreement, and Petitioner ultimately accepted an offer that included twenty-one years in prison (Ex. A at 118).

> Q.   Okay.  And that having been said, what's your position on the – the Court referred – what would be your position on the possibility of entering a plea and receiving 20 years in the Department of Corrections followed by 20 years' probation?
>
> A.   I'll take it to trial.

(Ex. A at 110-11).  The court warned Petitioner that this was his "last chance" to enter a plea, and Petitioner affirmed that he understood. *Id.* at 111.  Notwithstanding the trial court's admonishment, on December 5, 1997, Petitioner agreed to plead guilty to the charges in exchange for a twenty-one year prison sentence and ten years of probation (Ex. A at 23-29).  Thereafter, the trial court held a plea colloquy on December 8, 1997.  During the colloquy, Petitioner affirmed his understanding that the maximum possible penalty for his crimes if convicted at trial was life in prison, and stated that he was satisfied with the services of his attorney (Plea at 3-4).  Petitioner affirmed that no one had threatened or promised anything to get him to enter the plea. *Id.* at 4.

Petitioner does not now argue that he misunderstood the potential penalties he faced if convicted at trial or that he was sentenced outside the guidelines range of 148 months to 294 months in prison.  Rather, he states that Counsel repeatedly warned him that he faced a sentence of up to life in prison which caused him (Petitioner) to fear that the judge would impose a sentence outside of the guidelines range if he was convicted at trial.  Petitioner argues that, had he "realized that, under Florida law, no strong reason to depart upward existed, he would have judged his sentencing exposure differently and gone to trial." (Doc. 22 at 6).  Petitioner directs this Court's attention to Florida Statute § 921.0016(3), applicable at the time of Petitioner's 1997 offenses, which lists some of the factors a sentencing court considers when departing upward from the sentencing

guidelines, and states that "none of [the factors] are indicated by the facts of this case." *Id.* at 5.[3]

To the extent Petitioner argues that no competent counsel could have believed Petitioner may have been subject to an upward departure from the sentencing guidelines under the § 921.0016 factors, he is mistaken.  Under § 921.0016, a trial court was allowed to depart upward from a recommended sentence if "[t]he offense was one of violence and was committed in a manner that was especially heinous, atrocious, or cruel" or "[t]he victim suffered extraordinary physical or emotional trauma or permanent physical injury or was treated with particular cruelty." *Id.* at § 921.0016(3)(b) and (l).  In his second Rule 3.850 motion, Petitioner described the events that led to his conviction (Ex. A at 116). Petitioner admitted that he crawled through the window of a residence where the victims were staying; struck his former girlfriend's new paramour (John McDonough) on the head with the barrel of his gun; shot McDonough in the chest; and choked his former girlfriend (Bridgette Lambes) while telling her that he planned to kill her.[4]  Thereafter, he directed Lambes to dress and forced her from McDonough's home where she ran from him. Petitioner chased and recaptured Lambes, but she managed to break away again and escape. *Id.* at 116-17.  At his plea colloquy, the state recited the factual basis for the plea

---

[3] Florida Statue § 921.0016(2) (1997) states in pertinent part:

> A departure from the recommended guidelines sentence is discouraged unless there are circumstances or factors which reasonably justify the departure. Aggravating and mitigating factors to be considered include, **but are not limited to**, those listed in subsections (3) and (4).

*Id.* (emphasis added).  Notably, the lists in subsections (3) and (4) are not exclusive.

[4] Although Petitioner did not so state in his second Rule 3.850 motion, the arrest affidavit indicated that after shooting McDonough, Petitioner "attempted to shoot victim number two (Bridgette Lambes), but handgun malfunctioned." (Ex. A at 2).

which is similar to the facts as admitted to by Petitioner in his second Rule 3.850 motion, but includes an assertion that Petitioner also attempted to shoot Lambes.[5] Petitioner did not object to the factual basis.

Reasonable competent counsel could have concluded that Petitioner was vulnerable to an above-guidelines sentence based both upon the trial court's initial rejection of the original fifteen-year plea offer from the state and the violence and cruelty with which Petitioner committed his crimes. *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so

---

[5] The state recited the factual basis for the plea as follows:

> The State would have shown that between February 13 and February 14 of 1997, in Citrus County, Florida, the defendant did unlawfully and intentionally with a premeditate design [to] affect the death of John Joseph McDonnough, attempt to kill him by shooting him with a firearm, a handgun type firearm, in violation of Florida Statutes.

> As to Count 2, the State would have shown that in that same time period in Citrus County, the defendant did unlawfully and intentionally through a premeditated design to affect the death of Bridget Lamb, a human being, with intent to kill her by shooting her – by attempting to shoot her with that firearm, a handgun type firearm, in violation of Florida Statutes.

> As to Count 3, the State would have shown that the defendant did unlawfully enter and remain in a dwelling located at 6916 West Arbor Street, Crystal River, the property of John Joseph McDonough, as owner or custodian thereof, without his consent with intent to commit an offense therein, and attempted murder and, in the course thereof, armed himself with a dangerous weapon, a handgun type firearm, in violation of Florida Statues.

> As to Count 4, the State would have shown that on that same date the defendant did unlawfully by force or threat abduct Bridget Lamb against her will without lawful authority with the intent to commit or facilitate the commission of a felony, attempted murder, and during the attempted – and during the commission of that kidnapping, he carried, displayed, threatened, or attempted to use a weapon or firearm, a handgun type firearm, in violation of Florida Statutes.

*Id.* at 10-11.

patently unreasonable that no competent attorney would have chosen it."). Because competent counsel could have concluded that the facts of this case supported an upward departure, Counsel was not ineffective for advising Petitioner that he faced up to life in prison if convicted at trial. Petitioner has not satisfied *Strickland*'s performance prong, and he is not entitled to federal habeas relief on Claim One. 28 U.S.C. § 2254(d).

## B.     Claim Two

Petitioner states that the trial court rejected the state's initial plea offer of fifteen years in prison and fifteen years of probation because the judge mistakenly believed that Petitioner shot a woman (as opposed to a man) (Doc. 19 at 2). He asserts that Counsel was ineffective for failing to correct the judge's belief that the victim who suffered the bullet wound was male. *Id.* Petitioner asserts that Lambe (the female victim) "was not shot or even harmed" and that he suffered prejudice because the "the circuit court's [sic] relied on its mistake of [fact] to reject the fifteen-year plea agreement." *Id.* This claim does not appear to be exhausted in state court. However, Respondents do not assert an exhaustion defense, and a review of the record demonstrates that Claim Two may properly be denied on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Even had Counsel failed to correct the trial court's mistake as to the gender of the victim who suffered the actual bullet wound, Petitioner cannot demonstrate *Strickland* prejudice. In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the United States Supreme Court applied *Strickland* to a claim of ineffective assistance of counsel arising from plea negotiations. The *Lafler* Court held that to establish prejudice where ineffective advice led to an offer's rejection:

12

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), **that the court would have accepted its terms**, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385 (emphasis added).[6]   In other words, to establish *Strickland* prejudice, Petitioner needs to show that the trial judge would have accepted the state's plea offer of fifteen years in prison had Counsel corrected the court's mistake regarding the gender of the victim who suffered the actual bullet wound. He cannot meet this burden.

There is no dispute that Petitioner shot one of his victims in the chest with a handgun.  There is also no dispute that he choked, threatened to kill, and attempted to kidnap the other victim before she was able to escape (Ex. A at 1, "Arrest Affidavit"; Ex. A at 116).   A review of the plea colloquy supports a conclusion that the trial court did not base its rejection of the original plea offer merely upon the mistaken assumption that the wounded victim was female.  A factual basis was read at the plea colloquy which clarified that Petitioner actually shot McDonough in the chest and attempted to shoot Lambe (Plea at 10-11).  Thereafter, Petitioner asked the trial court for leniency on the ground that he was "not a killer," and the court pointed out that this was true only because his gun didn't work. *Id.* at 13.  The court explained, "Mr. Tomasik, I'm sorry, son, but you walk in and

---

[6] In *Lafler*, the defendant rejected a plea offer based on counsel's misadvice and was later convicted at trial. *Lafler*, 132 S. Ct. at 1383.  However, the Supreme Court did not specifically limit its holding regarding prejudice to this precise factual scenario.  In *Missouri v. Frye*, 132 S. Ct. 1399 (2012), defense counsel allowed a favorable plea offer to lapse, and the Supreme Court noted that to establish prejudice from counsel's deficient performance, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 1409. As in *Lafler*, the *Frye* court specifically noted that a defendant must establish that "the plea would have been entered without the prosecution canceling it **or the trial court refusing to accept it**, if they had the authority to exercise that discretion under state law." *Id.* (emphasis added).

you shoot somebody, you have to expect serious punishment.  And the only good thing that happened in this case is you didn't manage to kill anybody[.]" *Id.* at 13.  At no point did the judge imply that he considered the gender of the victims when evaluating the severity of Petitioner's crimes and the need for a long prison sentence.

The trial court was not bound by the fifteen-year plea agreement between the state and the defendant. *Goins v. State*, 672 So.2d 30, 31 (Fla. 1996) ("Even though the plea has been accepted and regardless of whether the judge participated in the negotiations, the judge is never bound to honor the agreement.").   Petitioner cannot demonstrate prejudice under *Lafler* or *Frye* because he has not shown that the trial judge rejected the initial plea agreement with the state solely because he believed the female victim suffered the actual bullet wound.  Claim Two fails to satisfy *Strickland*'s prejudice prong under the prejudice standards set forth in *Lafler* and *Frye* and is, therefore, rejected pursuant to 28 U.S.C. § 2254(d).

## C.    Claim Three

Petitioner asserts that "Counsel did not inform [Petitioner] that his plea could not be used against him or that it could be withdrawn after the judge refused to accept the fifteen-year plea offer.  Had [Petitioner] understand [sic] that he could still have gone to trial, he would have done so." (Doc. 19 at 2).  The post-conviction court rejected this claim as conclusively refuted by the record, and Florida's Fifth District Court of Appeal affirmed the rejection (Ex. B at 5-20; Ex. G at 2).  A review of the record supports a conclusion that Petitioner was aware of his right to go to trial.

After the trial court rejected the first plea offer, a status conference was held during which Petitioner told the court, under oath, that he no longer wished to enter a guilty plea and wanted to "take it to trial." (Ex. A at 111); *see* discussion *supra* Claim One.  In addition,

14

Petitioner signed a plea agreement indicating that he had discussed the facts of his case with Counsel and understood that he waived his right to a trial by pleading guilty (Ex. A at 27-28). The plea agreement also stated that no one "used any threats, force, pressure, or intimidation" to induce him to make the plea." *Id.* Finally, during the plea colloquy, the trial court asked Petitioner numerous questions regarding his understanding of his right to go to trial:

> Q. Do you understand that you have the right to plead not guilty and to be tried by a jury with the assistance of an attorney?
>
> A. That's correct.
>
> Q. Do you understand that you would have an opportunity to sit with your attorney and assist in the selection of a jury prior to being tried?
>
> A. (No response.)
>
> Q. Do you understand that you're here for jury selection? This is the day where you'd select a jury, correct?
>
> A. That's correct.
>
> Q. And you would have an opportunity to have your input into selecting a jury, correct?
>
> A. Yes, sir.
>
> Q. Do you understand that at trial, you have the right to compel the attendance of witnesses on your behalf, the right to cross-examine witnesses against you, and the right not to be compelled to incriminate yourself?
>
> A. Yes.
>
> Q. Do you understand that at a trial, you're entitled to have the State prove its case beyond and to the exclusion of a reasonable doubt?
>
> A. Yes, sir.
>
> Q. Do you understand that by pleading to this charge, you're waiving your right to a trial?

A.     Yes, sir.

(Plea at 5-6).  Petitioner asked the court to explain his right to appeal an illegal sentence, and the judge explained that his plea entailed giving up the right to appeal all matters related to the judgment of the court, except for an illegal sentence.  *Id.* at 6, 8-9.  After hearing the factual basis from the state, the court found that Petitioner was competent and understood the proceedings.  *Id.* at 11.

In deciding whether the plea was voluntary, a habeas court places great weight on a defendant's sworn statements when entering the plea.  "[R]epresentations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the pleas, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), a presumption Petitioner has failed to overcome. Petitioner's statements at the status conference and plea colloquy and his signed plea agreement indicate that he was fully aware of his right to proceed to trial.  Accordingly, Counsel did not perform deficiently, and the state courts' rejection of Claim Three was neither contrary to, nor based upon an unreasonable application of *Strickland*.  Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

## D.     Claims Four and Five

In Claim Four, Petitioner alleges that Counsel was ineffective for failing to inform him of the defenses of voluntary intoxication, heat of passion, and innocence (Doc. 19 at 2-3).  In Claim Five, he alleges that his plea was involuntary because he "was not aware of the defenses available to him." *Id.* at 3.  He asserts that, had he known "he had viable defenses to the charges available to him," [he] would have insisted on proceeding to trial by jury." *Id.*  Petitioner raised similar claims in his second Rule 3.850 motion. The post-

conviction court rejected the claims as conclusively refuted by the record, and Florida's Fifth District Court of Appeal affirmed the rejection (Ex. B at 5-21; Ex. G).

Plaintiff's assertion that he was unaware he could raise the defense of "innocence" at trial is meritless.  During the plea colloquy, Petitioner was informed that he had the right to proceed to trial where the state would be required to "prove its case beyond and to the exclusion of a reasonable doubt" (Plea at 6). Petitioner affirmed that he understood. *Id.* Petitioner signed a plea agreement in which he affirmed his understanding that, by pleading guilty, he forfeited his right to have the state prove the truth of the claims against him (Ex. A at 29).  Petitioner also affirmed that he discussed the case with Counsel and that he was aware of the available defenses. *Id.*

As to Petitioner's claim that he was never informed of "voluntary intoxication" or "heat of passion" defenses[7], the court notes that only Petitioner's belated and unsubstantiated allegations support a conclusion that he was so intoxicated or enraged when he attacked the victims that he could not form the requisite intent to do so.[8]  In his second Rule 3.850 motion, Petitioner admitted that he: (1) became concerned about Lambes' welfare when she did not return home for several days after a fight with

---

[7] In Florida, before October 1, 1999, voluntary intoxication was a recognized defense to specific intent crimes such as first-degree murder. Effective as of October 1, 1999, voluntary intoxication has been eliminated as a defense in Florida. *See* Fla. Stat. § 775.051 (1999). The defense was not a complete defense, however, but available only to negate specific intent. *Gardner v. State*, 480 So.2d 91, 92 (Fla. 1985); *Chestnut v. State*, 538 So.2d 820, 822 (Fla. 1989). Thus, the defense of voluntary intoxication was available only to reduce the charged offense to a lesser-included offense. Voluntary intoxication was not an available defense for general intent crimes, including second-degree murder or manslaughter. *Wilson v. State*, 871 So.2d 298, 301 (Fla. 1st DCA 2004).

Likewise, a heat of passion defense can be used to negate the element of premeditation in first degree murder or the element of depravity in second degree murder. *Villella v. State*, 833 So. 2d 192, 195 (Fla. 5th DCA 2002). A heat-of-passion defense involves showing that "[a] sudden transport of passion, caused by adequate provocation, [suspended] the exercise of judgment, and dominate[d] volition, so as to exclude premeditation and a previously formed design[.]" *Id.*

[8] The arrest affidavit states "unknown" as to indications of alcohol or drug influence (Ex. A at 1).  However, Petitioner was arrested several hours after the crimes. *Id.*

Petitioner; (2) found a matchbook with directions to McDonough's home and drove to the address; (3) returned to his car for a gun when he realized that Lambes was in McDonough's residence; and (4) climbed through a window of McDonough's home "to get" Lambes (Ex. A at 116).  Notably, Petitioner does not state in his second Rule 3.850 motion that he shot McDonough because he was intoxicated or enraged; rather, he claims that he shot McDonough on accident after hitting him on the head with the butt of his gun. *Id.*  Reasonable competent counsel could have concluded that Petitioner's deliberate actions, including bringing a gun with him when he went to look for his estranged girlfriend, foreclosed either a voluntary intoxication or heat of passion defense. *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992) (trial counsel not ineffective for rejecting intoxication as a defense "because it was inconsistent with the deliberateness of [the defendant's] actions during the shootings."); *Floyd v. State*, 850 So.2d 383, 397 (Fla. 2002) ("Defendant's deliberate selection and transportation of a gun to the victim's home is clearly inconsistent with his theory that he argued with the victim and simply shot her in a moment of uncontrolled rage without having fully formed a conscious purpose to kill.").  Petitioner presents no evidence to rebut the presumption of Counsel's competence.  Accordingly, Petitioner has not satisfied *Strickland*'s performance prong, and Claim Four does not merit federal habeas corpus relief.

As to Petitioner's assertion that his plea was involuntary because he was unaware of available defenses, an analysis of the state court's decision under the standards set forth in 28 U.S.C. § 2254(d) precludes relief.  On habeas review, the standard for determining the validity of a plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969);

18

*Hill v. Lockhart*, 474 U.S. at 56.  The Eleventh Circuit explains the standard for federal review of state court guilty pleas as follows:

> A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process:  If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea [] will be upheld on federal review.

*Stano v. Dugger*, 921 F. 2d 1125, 1141 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (quotation marks omitted)).

Petitioner's claim that his plea was involuntarily is conclusively refuted by the record. Prior to pleading guilty, Petitioner signed a plea agreement stating that no one had "used any threats, force, pressure, or intimidation" to induce him to make the plea (Ex. 1 at 29).  During the plea colloquy, the trial court questioned Petitioner to determine whether he was competent to plead guilty (Plea at 3, 4, and 11). The court explained that Petitioner faced charges of attempted first degree murder, burglary of a dwelling while armed, and kidnaping. *Id.* at 7, 8.  The state read a factual basis for the plea into the record. *Id.* at 9-10.  The court also explained that Petitioner faced a maximum sentence of life in prison. *Id.* at 3-4. Petitioner told the trial court that he understood he was waiving his right to a jury trial. *Id.* at 5, 6, 9.  That Petitioner now subjectively believes he may have been able to present defenses to his crimes had he gone to trial (including the defense of "innocence") is irrelevant; Petitioner knowingly waived his right to do so.  *See also* discussion *supra* Claim Four (discussing the viability of voluntary intoxication and heat of passion defenses).

The record before this Court shows a voluntary plea.  The state court's rejection of Claim Five was reasonably justified in light of the evidence presented in the state court proceedings.  Claim Five is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.    <u>Certificate of Appealability</u>[9]

Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u>  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

## V.      <u>Conclusion</u>

Based on the reasons set forth in this Order, Petitioner's 28 U.S.C. § 2254 amended petition is **DENIED with prejudice.**   Petitioner is denied a certificate of appealability.   The Clerk of Court is directed to terminate any pending motions, close the file, and enter judgment accordingly.

**DONE** and **ORDERED** in Ocala, Florida on May 23, 2016.

_____

UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies to:  Jon R. Tomasik
Counsel of Record